IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Curtis T. Johnson, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 8:22-cv-03583-TMC |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Warden, Allendale Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Curtis T. Johnson, ("Petitioner"), a state prisoner proceeding *pro se*, filed this Petition for Writ of Habeas Corpus on October 17, 2022. (ECF No. 1). In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C., this matter was referred to a magistrate judge for pretrial handling. On February 13, 2023, Respondent filed a Motion for Summary Judgment. (ECF No. 22). Petitioner filed a response in opposition to the motion, (ECF No. 32), to which Respondent replied, (ECF No. 34), and Petitioner filed a sur reply, (ECF No. 35). On August 1, 2023, the magistrate judge issued a Report and Recommendation ("Report"), recommending the court grant in part and deny in part Respondent's motion for summary judgment. (ECF No. 36). Petitioner was advised of his right to file objections to the Report. (ECF No. 36-1). Petitioner filed objections on August 17, 2023. (ECF No. 41). The Petition is now ripe for review.

**STANDARD OF REVIEW**

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter. *Wimmer v. Cook*, 774 F.2d 68, 72 (4th Cir. 1985) (quoting *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). The court is

charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions.  28 U.S.C. § 636(b)(1).  However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]"  *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017).  "An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'"  *Id.* at 662 n.6 (quoting *United States v. One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, & Contents, Known As: 2121 E. 30th St., Tulsa, Okla.*, 73 F.3d 1057, 1059 (10th Cir. 1996)).  On the other hand, objections which merely restate arguments already presented to and ruled on by the magistrate judge or the court do not constitute specific objections.  *See, e.g.*, *Howard v. Saul*, 408 F. Supp. 3d 721, 726 (D.S.C. 2019) (noting "[c]ourts will not find specific objections where parties 'merely restate word for word or rehash the same arguments presented in their [earlier] filings'"); *Ashworth v. Cartledge*, Civ. A. No. 6:11-cv-01472-JMC, 2012 WL 931084, at *1 (D.S.C. March 19, 2012) (noting that objections which were "merely almost verbatim restatements of arguments made in his response in opposition to Respondent's Motion for Summary Judgment . . . d[id] not alert the court to matters which were erroneously considered by the Magistrate Judge").  Furthermore, in the absence of specific objections to the Report, the court is not required to give any explanation for adopting the magistrate judge's recommendation.  *Greenspan v. Brothers Prop. Corp.*, 103 F. Supp. 3d 734, 737 (D.S.C. 2015) (citing *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983)).

Additionally, since Petitioner is proceeding *pro se*, this court is charged with construing his Petition and filings liberally in order to allow for the development of a potentially meritorious

case.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Martin v. Duffy*, 858 F.3d 239, 245 (4th Cir. 2017) (noting that "when confronted with the objection of a pro se litigant, [the court] must also be mindful of [its] responsibility to construe pro se filings liberally").  This does not mean, however, that the court can ignore a *pro se* party's failure to allege or prove facts that establish a claim currently cognizable in a federal district court.  *See Stratton v. Mecklenburg Cnty. Dep't of Soc. Servs.*, 521 Fed. App'x 278, 290 (4th Cir. 2013) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985) (noting that "'district judges are not mind readers,' and the principle of liberal construction does not require them to 'conjure up questions never presented to them or to construct full-blown claims from sentence fragments'")).

## PROCEDURAL HISTORY[1]

In April 2007, Petitioner was indicted in Lexington County, South Carolina with charges of murder (indictment 2007-GS-32-01473), two counts of assault and battery with intent to kill (indictments 2007-GS-32-01474 and 2007-GS-32-01476), and possession of a firearm or knife during the commission of a violent crime (indictment 2007-GS-32-013475). (ECF No. 22 at 2). Petitioner was tried by a jury, and after a week-long jury trial in September 2009, he was found guilty of the lesser included offenses of voluntary manslaughter and two counts of assault and battery of a high and aggravated nature as well as guilty as charged of the weapons offense. *Id.* The judge sentenced Petitioner to an aggregate term of thirty-five years of imprisonment: thirty

---

[1] The factual background and procedural history set forth herein is taken from Respondent's memorandum in support of his motion for summary judgment, (ECF No. 22), and the administrative record from the state court proceedings, which were filed as exhibits to the Respondent's Motion for Summary Judgment (ECF No. 22). While Petitioner objects to the findings of the magistrate judge regarding the factual basis of his crimes, *see* (ECF No. 41 at 2), he did not object to the procedural history set forth in the Report or the Motion for Summary Judgment.

years for voluntary manslaughter, ten years concurrent for each count of assault and battery of a high and aggravated nature, and five years consecutive for the weapons charge. *Id.*

Petitioner directly appealed his conviction and sentence to the South Carolina Court of Appeals. *Id.* at 3.  On appeal, his defense counsel filed an *Anders*[2] brief and raised one issue: "[w]hether the trial court erred in refusing to grant a directed verdict to the charges against appellant because his actions were in self-defense and in defense of another?" *Id.* Appellate counsel also moved to be relieved. *Id.* Petitioner filed a *pro se* brief alleging several additional grounds: (1) whether relieving his appellate attorney as counsel of record on appeal would deny him his right to effective assistance of appellate counsel; (2) whether there was sufficient evidence to conclude that Petitioner acted in the element of sudden heat of passion to support a voluntary manslaughter conviction; and (3) whether trial court erred in instructing the jury on a charge of "mutual combat" since that instruction was "highly prejudicial" to Petitioner's defense of self defense and defense of another. (ECF No. 22 at 3).

The South Carolina Court of Appeals affirmed the sentences and convictions. *State v. Johnson*, 2013-UP-022, 2013 WL 8482251 (S.C. Ct. App. Jan. 16, 2013). On February 21, 2013, the Court of Appeals denied Petitioner's *pro se* motion for rehearing, and remittitur was issued on April 7, 2013. (ECF No. 22 at 4).

On August 22, 2013, Petitioner filed an application for post-conviction relief ("PCR"). The initial PCR application included thirty-one  allegations of ineffective assistance of trial counsel, four allegations of ineffective assistance of appellate counsel, fifteen allegations of prosecutorial misconduct, one  allegation of juror misconduct, and four  allegations of due process violations.

---

[2] *Anders v. California*, 386 U.S. 738, 744 (1967) (holding that counsel has fulfilled his duty of advocate if he files a brief referring to anything in the record that may support an appeal if he in good faith concludes the appeal is without merit).

(ECF No. 22-6 at 32–39). On November 11, 2013, Petitioner, through counsel, filed an amendment to his PCR application to add "in addition to prior grounds stated" another claim for ineffective assistance of appellate counsel. (ECF No. 22-6 at 42).

A hearing on Petitioner's PCR application was held on April 21, 2015, and Petitioner was represented by counsel. (ECF No. 22-6 at 54). At the hearing, PCR counsel notified the court that though there were "numerous things in the PCR application that Mr. Johnson had originally filed" and though she had filed amendments, Petitioner was only going forward on the following claims of ineffective assistance of counsel at the hearing:

(1) "[F]ailure to request and perform certain pretrial motions";

(2) "Failure to object to several prejudicial statements throughout the trial";

(3) "Failure to object to several prejudicial statements by the prosecutor in closing arguments";

(4) "Failure to object to the judge's comments on the case regarding his beliefs during sentencing";

(5) "Failure to object to one of the jury charges regarding *Belcher*"[3]; and

(6) "Appellate counsel regarding missing transcript pieces and the reconstruction" of the record.

(ECF No. 22-6 at 58).

On July 15, 2019, the PCR court denied and dismissed with prejudice Petitioner's PCR application. (ECF No. 22-7 at 80–109). That order addressed the following claims: (1) ineffective assistance of trial counsel for failure to move for (a) a hearing pursuant to *Jackson v. Denno*, 371 U.S. 967 (1963), (b) an immunity hearing pursuant to the Protection of Persons and Property Act,

---

[3] *State v. Belcher*, 385 S.C. 597, 685 S.E.2d 802 (2009).

and (c) the witnesses to be sequestered; (2) ineffective assistance of trial counsel for failure to object to (a) a victim's testimony about paralysis, (b) an investigator's testimony about a photo identification, (c) a lay witness's testimony about tire tracks, and (d) a crime scene analyst's testimony about the bullet trajectory; (3) ineffective assistance of trial counsel for failure to object to the State's closing argument; (4) ineffective assistance of trial counsel for failure to object to comments by the trial court; (5) ineffective assistance of trial counsel for failure to object to an impermissible *Belcher* charge; and (6) ineffective assistance of counsel for failure to adequately reconstruct the trial record. *Id.* The order further noted that since the time of the PCR hearing, PCR counsel had been relieved. *Id.* at 109. Accordingly, the judge notified Petitioner of his right to appeal and time constraints for doing so. *Id.* Petitioner filed a *pro se* motion to alter or amend the judgment (ECF No. 22-7 at 113–116), and the PCR court denied the motion (ECF No. 22-7 at 117).

Petitioner filed a pro se appeal. (ECF No. 22-10). On April 15, 2020, an Appellate Defender with the South Carolina Commission of Indigent Defense filed a Petition for Writ of Certiorari in the Supreme Court of South Carolina on Petitioner's behalf. (ECF No. 22-11). In the Petition, counsel raised one argument:

> The PCR court erred in finding trial counsel was not ineffective for failing to object to statements made by the solicitor during closing that were inflammatory and improperly played to the jury's emotions where the solicitor repeatedly referred to the decedent as an "Iraqui war veteran," one wounded man's body as having been "splattered," and another injured man's wound as a "bone sticking out [of] his leg."

*Id.* at 3 (alteration in original). On October 6, 2020, the Supreme Court of South Carolina transferred the appeal to the South Carolina Court of Appeals. (ECF No. 22-13). On April 1, 2022, the South Carolina Court of Appeals denied the Petition for Writ of Certiorari. (ECF No. 22-14). Remittitur was issued on April 21, 2022. (ECF No. 22-15).

Consequently, Petitioner filed this Petition for writ of habeas corpus on October 13, 2022,

alleging the following grounds, quoted substantially verbatim:

**GROUND ONE:** The trial court erred in refusing to grant a [d]irected [v]erdict to the charges against the Petitioner because his actions were in self-[d]efense and [d]efense of [a]nother. This violated the Petitioner's 5th and 14th Amendment rights of [d]ue [p]rocess of the U.S. Constitution.

**GROUND TWO:** There was insufficient evidence to convince a rational trier of fact beyond a reasonable doubt that the Petitioner acted in the element of "sudden heat of passion" to support a valid voluntary manslaughter conviction, when the element of "sudden heat of passion" was not established and proven beyond a reasonable doubt, as a matter of law, by the State. This violated Petitioner's 5th and 14th Amendments [d]ue [p]rocess [r]ights of the U.S. Constitution.

**GROUND THREE:** The trial court erred in instructing the jury on a charge of mutual combat, since the instruction was highly prejudicial to Petitioner's self-[d]efense and [d]efense of [a]nother defenses. This violated Petitioner's 5th and 14th Amendment rights of [d]ue [p]rocess of the U.S. Constitution; thus denying Petitioner his right to a fair trial.

**GROUND FOUR:** Trial counsel was ineffective for failing to motion during Petitioner's sentencing hearing, or file a post-trial motion after the sentencing hearing, for an acquittal, when the trial court declared the jury verdict a "compromise verdict," any sentence the Court gave Petitioner would not serve justice, and Petitioner should not look to the Court's sentence for justice. This violated Petitioner's 5th, 6th, and 14th Amendment rights of effective assistance of counsel, and [d]ue [p]rocess [r]ights of the U.S. Constitution.

**GROUND FIVE:** Trial counsel [was] ineffective for not filing a pre-trial motion for the "Protection of Persons and Property Act." This violated Petitioner's 5th, 6th, and 14th Amendment rights of effective assistance of counsel and due process rights of the U.S. Constitution.

**GROUND SIX:** Trial counsel [was] ineffective for requesting erroneous, prejudicial, and burden shifting jury instructions of voluntary manslaughter and assault and battery of a high and aggravated nature (ABHAN). This violated Petitioner's 5th, 6th, and 14th Amendment rights of effective assistance of counsel and due process rights of the U.S. Constitution.

**GROUND SEVEN:** Trial counsel [was] ineffective for failing to pre-trial interview and investigate witnesses. This violated Petitioner's 5th, 6th, and 14th Amendment rights of effective assistance of counsel, right to

confrontation of witnesses against him, and Due Process rights of the U.S. Constitution.

**GROUND EIGHT:** Trial counsel [was] ineffective for failing to cross-examine and impeach witness[es] with relevant exculpatory evidence. This violated Petitioner's 5th, 6th, and 14th Amendment rights of effective assistance of counsel, right to confrontation of witness[es] against him, and due process rights of the U.S. Constitution.

**GROUND NINE:** Trial counsel was ineffective for failing to present expert witness testimony to testify that Petitioner's actions were consistent with the defenses of [s]elf-[d]efense and [d]efense of [a]nother. This violated Petitioner's 5th, 6th, and 14th Amendment rights of effective assistance of counsel and [d]ue [p]rocess [r]ights of the U.S. Constitution.

**GROUND TEN:** Trial counsel [was] ineffective for making improper comments during closing arguments. This violated Petitioner's 5th, 6th, and 14th amendment rights of effective assistance of counsel and [d]ue [p]rocess [r]ights of the U.S. Constitution.

**GROUND ELEVEN:** Trial counsel was ineffective for failing to request tailored jury instructions to support Petitioner's defenses of [d]efense of [a]nother and [s]elf-[d]efense. This violated Petitioner's 5th, 6th, and 14th Amendment rights of effective assistance of counsel and due process rights of the U.S. Constitution.

**GROUND TWELVE:** Trial counsel was ineffective for failing to object to erroneous prejudicial, and burden shifting jury instructions; and failed to motion for a mistrial because Petitioner was denied a fair trial. This violated Petitioner's 5th, 6th, and 14th Amendment rights of [d]ue [p]rocess and effective assistance of counsel of the U.S. Constitution.

**GROUND THIRTEEN:** Trial counsel [was] ineffective for failing to present character witnesses and character evidence of Petitioner's good character. This violated Petitioner's 5th, 6th, and 14th Amendment rights of effective assistance of counsel, due process rights, and the right to have compulsory process for obtaining witnesses in his favor of the U.S. Constitution.

**GROUND FOURTEEN:** Trial counsel [was] ineffective for failing to object to the Prosecutor's unconstitutional, burden shifting, and prejudicial closing argument statements; and failed to motion for a mistrial. This violated the Petitioner's 5th, 6th, and 14th Amendment rights of effective assistance of counsel and Due Process Rights of the U.S. Constitution.

(ECF No. 1).

On February 13, 2023, Respondent filed its return and a Motion for Summary Judgment. (ECF Nos. 22; 23).  The court entered an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975),  which explained the summary judgment procedure and the consequences of failing to adequately respond thereto. (ECF No. 24). Petitioner filed a response in opposition to Respondent's motion, (ECF No. 32), and Respondent replied (ECF No. 33). Petitioner filed a sur-reply. (ECF No. 34). The magistrate judge entered her Report on August 1, 2023, recommending the court grant in part and deny in part Respondent's motion for summary judgment.  (ECF No. 36).  Petitioner filed objections to the Report. (ECF No. 41).

## MAGISTRATE JUDGE'S REPORT

In her Report, the magistrate judge recommends that the undersigned grant in part and deny in part Respondent's motion for summary judgment. (ECF No. 36). The magistrate judge first addressed Respondent's claim that Petitioner had procedurally defaulted Grounds Six through Thirteen and a portion of Ground Fourteen (ECF No. 22 at 9–11).  (ECF No. 36 at 17–18).  The magistrate judge noted that "Petitioner does not contend that these grounds are properly exhausted, but instead argues he can establish cause and actual prejudice for any procedurally barred claims under *Martinez v. Ryan,* 566 U.S. 1 (2012), because his PCR counsel was ineffective in failing to pursue these claims at his PCR evidentiary hearing." *Id.* at 18. In response, Respondent filed a "very brief reply asserting that even if the Court were to conclude that Petitioner could establish cause and prejudice, Petitioner is barred from developing his claims through an evidentiary hearing based on *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022)." *Id.*   Ultimately, the magistrate judge determined that at this juncture "briefing is insufficient to determine whether Petitioner can establish cause and prejudice in this case." *Id.*  The magistrate judge laid out the insufficiencies of the briefing in the Report, *id.*, and ultimately recommended that the court deny the motion for

summary judgment as to the allegedly procedurally defaulted grounds and that the "Respondent be directed (1) to refile its motion for summary judgment with respect to the Procedurally Defaulted Grounds and (2) to specifically address, as outlined [in the Report], whether *Martinez* is applicable, whether Petitioner can establish cause and prejudice under *Martinez*, either by meeting § 2254(e)(2)'s requirements for an evidentiary hearing or on the basis of the current state record." *Id.* at 43. Additionally, the magistrate judge indicated that "the parties should be directed to address only the Procedurally Defaulted Grounds in their supplemental findings." *Id.*

The magistrate judge then considered Grounds One and Two together, as both grounds raise issues regarding the sufficiency of the evidence. *Id.* at 20–30.   In Ground One, Petitioner argues that the trial court erred in refusing to grant him a directed verdict because Petitioner acted in self defense and/or in defense of another. (ECF No. 1 at 5). In Ground Two, Petitioner argues that the evidence does not support a voluntary manslaughter conviction because the State did not prove the element of "sudden heat of passion" at trial. *Id.* at 7. The magistrate judge noted that "a federal court's review of such claims is 'sharply limited'" and that "[f]ederal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review" (ECF No. 36 at 21) (quoting *Wilson v. Greene*, 155 F.3d 396, 405–06 (4th Cir. 1998)). Furthermore, the magistrate judge indicated that "when faced with all the evidence that allows conflicting inferences, the Court must presume that the jury resolved such conflicts in the State's favor." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)). Accordingly, pursuant to the *Jackson* standard, the magistrate judge explained that a petitioner "is entitled to relief only if 'no rational trier of fact could have found proof beyond a reasonable doubt'" as to the Petitioner's convictions. *Id.*

As to Ground One, the magistrate judge indicated that "[a] directed verdict is appropriate only when the prosecution presents no evidence whatsoever of one or more elements of the offense." *Id.* at 22 (citing *State v. McCluney*, 361 S.C. 607, 609, 606 S.E.2d 485, 486 ( 2004)). The magistrate judge went through each of Petitioner's original charges[4], recited the elements as to those charges, and summarized the facts that were presented at trial. *Id.* at 22–28. As to each of these charges, the magistrate judge indicated that Petitioner seemed to argue that he was entitled to directed verdict as to each charge because of his defenses of self defense and/or defense of another. *Id.* at 23 n.8, 25 n.10, 27 n.11. However, the magistrate judge concluded that "even if sufficient evidence demonstrated Petitioner acted in self-defense or defense of another, it would not prevent a jury from rejecting that defense where sufficient evidence also exists to prove every element" of the charge. *Id.* at 23 n.8, 25 n.10, 27 n.11. Based on the evidence submitted at trial, the magistrate judge determined that the Petitioner had not demonstrated that no trier of fact could have found him guilty of the allegations, and, therefore, the state court's denial of his motions for directed verdict were not contrary to, or an unreasonable application of, clearly established federal law. *Id.* at 28. Therefore, the magistrate judge recommended granting Respondent's motion for summary judgment as to Ground One. *Id.*

Next, the magistrate judge turned to Ground Two. The magistrate judge noted that "voluntary manslaughter is the unlawful killing of a human being in the sudden heat of passion upon sufficient legal provocation," and defined "sudden heat of passion" as "such as would naturally disturb the sway of reason, and render the mind of an ordinary person incapable of cool reflection, and produce what, according to human experience, may be called an uncontrollable

---

[4] As indicated above, Petitioner was convicted of the weapons charge as-charged at trial, but he was convicted of lesser included offenses as to his other three charges.

impulse to do violence." (ECF No. 36 at 28) (quoting *State v. Cole*, 338 S.C. 97, 102, 525 S.E.2d 511, 513 (2000)). The magistrate judge again recited the facts as presented at trial. She then concluded that the

> evidence supports the voluntary manslaughter conviction because Petitioner's testimony that three men had guns and had said they were going to shoot Petitioner and his brother, along with the testimony that they had a gun pointed at his brother, supports a finding that there was provocation. Additionally, Petitioner's testimony that, in response to being terrified that he and his brother were going to lose their lives, he ran over Gadson with a vehicle and then fired a gun he found in the glove box of his brother's vehicle along with Gadson's evidence that he heard more than five gun shots is sufficient evidence to support a finding that Petitioner acted in a sudden heat of passion.

*Id.* at 29. Accordingly, the magistrate judge determined that Petitioner had not shown that no rational trier of fact could have found him guilty of involuntary manslaughter, and, therefore, that the state court's dismissal of his appeal was not contrary to or an unreasonable application of clearly established federal law. *Id.* at 30. Therefore, the magistrate judge recommended granting Respondent's motion for summary judgment as to Ground Two. *Id.*

Next, the magistrate judge addressed Ground Three, where Petitioner argues that the trial court erred in instructing the jury on the charge of mutual combat. *Id.* The magistrate judge noted that "[a]lleged errors in state court jury instructions. . . are matters of state law and do not provide the basis for federal habeas corpus relief unless the instructions infect the entire trial such that due process has been denied." *Id.* (quoting *Temoney v. Sapp*, No. 0:06-1983-CMC-BM, 2007 WL 752200, at *8 (D.S.C. Mar. 1, 2007)). The magistrate judge explained the doctrine of mutual combat and how it relates to the defense of self defense. *Id.* at 31. She further explained that mutual combat must demonstrate a "mutual intent and willingness to fight" and that if such is present, it negates the defense of self-defense. *Id.* (citing *State v. Taylor*, 356 S.C. 227, 231, 589 S.E.2d 1, 3 (2003)). In reviewing the facts presented at trial, the magistrate judge noted that there existed

evidence that showed that Petitioner and his brother went to the deceased's apartment with a pair of brass knuckles, a metal rod or pipe, and a pistol. *Id.* The decedent and two others then walked outside to meet them, and the decedent brought out a shotgun. *Id.* The magistrate judge concluded that based on the record, the Petitioner failed to demonstrate that a mutual combat charge was erroneous, and even if he could prove that such was erroneous, he had failed to demonstrate that it was "so prejudicial that it affected the outcome of the entire trial." *Id.* Accordingly, the magistrate judge recommended the court grant Respondent's motion for summary judgment as to Ground Three. *Id.*

The magistrate judge next turned to Petitioner's claims of ineffective assistance of counsel, namely Grounds Four, Five, and a "portion" of Fourteen. As to each of these grounds, the magistrate judge considered whether the PCR court reasonably applied the two-part test under *Strickland v. Washington*, 466 U.S. 668 (1984), to evaluate Petitioner's claim. *Id*. at 32 (citing *Strickland*, 466 U.S. at 687–96). Under *Strickland*, Petitioner was required to establish both that counsel's performance was deficient, and that he was prejudiced by such deficient representation. *Id*. at 32 (citing *Strickland*, 466 U.S. at 687–96).

As for Ground Four, Petitioner claims that trial counsel was ineffective for failing to move for an acquittal "when the court declared the jury verdict a 'compromised verdict,' any sentencing the [trial c]ourt gave Petitioner would not serve justice, and Petitioner should not look to the [trial c]ourt's sentence for justice." *Id.* at 33. After thoroughly discussing the testimony and evidence presented at the PCR hearing, the magistrate judge concluded that the PCR court "applied the correct legal standard" and that the "record fail[ed] to demonstrate the court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a different result from Supreme Court precedent" and, therefore, that the court

13

had not acted contrary to Supreme Court precedent. *Id*. at 35. Therefore, the magistrate judge determined that the court must "analyze 'whether the state's application of the *Strickland* standard was unreasonable.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). Ultimately, the magistrate judge determined that she could not find the PCR court's application of *Strickland* to be unreasonable, as its determination was supported by the record, and nothing in the record "reflects that the court considered improper factors at sentencing or that Petitioner was entitled to an acquittal based on the trial court's comments." *Id.* Therefore, the magistrate judge recommends that summary judgment be granted to Respondent as to Ground Four. *Id*.

As to Ground Five, Petitioner alleges that trial counsel was ineffective in failing to file a pre-trial motion for immunity under the Protections of Persons and Property Act. *Id.* The magistrate judge quoted the PCR court's findings, which included a determination that the Protections of Persons and Property Act did not apply to the factual scenario presented in this case[5] and that, therefore, trial counsel's failure to request an immunity hearing pursuant to the Act did not constitute ineffective assistance of counsel. *Id.* at 36. The magistrate judge determined that the state court's decision was not contrary to any Supreme Court precedent and that the PCR court's application of *Strickland* was not unreasonable. *Id.* at 39. In reaching this conclusion, the magistrate judge noted that the "state court's interpretation of state law is entitled to deference." *Id.* (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)). The magistrate judge indicated that Petitioner had failed to demonstrate that the PCR court unreasonably applied *Strickland* in

---

[5] Specifically, the PCR Court noted that "[t]he record in this case provides no evidence bearing significance to any provision of the Act. This incident occurred outside of the victims' residence. There was no evidence presented at trial that would support a finding that the victims were in the process of unlawfully and forcefully entering [Petitioner's] dwelling, residence, or occupied vehicle. Further there was no evidence presented at trial reflecting the victims were removing or attempting to remove [Petitioner] or his codefendant against their will from their dwelling, residence or occupied vehicle." (ECF No. 22-7 at 89–90).

determining that the Protection of Persons and Property Act did not apply to Petitioner's case, and that, therefore, counsel was not ineffective. *Id.* Accordingly, the magistrate judge recommended the court grant Respondent's motion for summary judgment as to Ground Five. *Id.*

Finally, the magistrate judge addressed Petitioner's last claim of ineffective assistance of counsel, Ground Fourteen, in which Petitioner argues that trial counsel was ineffective for failing to object to the prosecution's "unconstitutional, burden shifting, and prejudicial closing argument statements[,]" (ECF No. 1-2 at 4). (ECF No. 36 at 40–43). The magistrate judge again set forth the PCR court's analysis, which concluded that based on the entirety of the record and the evidence presented, the contested comments were not impermissibly inflammatory and that counsel was not ineffective in failing to object. *Id.* at 40–42.  The magistrate judge found that the PCR court's finding that counsel was not deficient was not unreasonable because the record supported the PCR court's determination and because it was presumed that the jury followed the instructions given by the trial judge, who had informed the jury that opening and closing statements are not evidence on which the jury should base its decision.[6] *Id.* at 43. Accordingly, the magistrate judge determined that the PCR court did not misapply *Strickland*, nor was his adjudication based on an unreasonable determination of the facts, and recommended that Respondent's motion for summary judgment be granted as to Ground Fourteen as to the allegation regarding failure to object to the statements in the closing argument.[7]  *Id*. at 20.

---

[6] The trial judge instructed the jury several times that opening and closing statements were not evidence but simply arguments by attorneys in the case. (ECF Nos. 22-1 at 64, 65; 22-5 at 52).

[7] Notably, Petitioner also argues that trial counsel was ineffective in failing to move for a mistrial due to the statements made in closing argument. The Report addressed this portion of Ground Fourteen in the section regarding claims that had been potentially procedurally barred.

Accordingly, based on the foregoing, the magistrate judge recommends that this court grant in part and deny in part Respondent's motion for summary judgment.

## DISCUSSION

Turning to the applicable law and Petitioner's objections to the Report, the court notes that as the magistrate judge correctly noted, under 28 U.S.C. § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the state court proceedings unless the adjudication of the claim –
>
> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

"[T]o grant [a] habeas petition, [the court] must conclude that the state court's adjudication of [the petitioner's] claims was not only incorrect, but that it was objectively unreasonable." *McHone v. Polk*, 392 F.3d 691, 719 (4th Cir. 2004). Additionally, the factual findings of the state court are entitled to deference and are "presumed to be correct" unless Petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Presently, this case is before the court on Respondent's motion for summary judgment (ECF No. 23). Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of

summary judgment "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Phillips v. Nlyte Software Am. Ltd*., 615 Fed. App'x 151, 152 (4th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"'In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party.'" *Sellers v. Keller Unlimited LLC*, 388 F. Supp. 3d 646, 649 (D.S.C. 2019) (quoting *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996)).  However, "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.'" *McKinney v. G4S Gov't Sols., Inc*., 711 Fed. App'x 130, 134 (4th Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The moving party has the burden of proving that summary judgment is appropriate.  *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Lane & Roderick, Inc*., 736 Fed. App'x 400, 400 (4th Cir. 2018) (citing *Celotex Corp.*, 477 U.S. at 322–23).  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(c), (e); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc*., 790 F.3d 532, 540 (4th Cir. 2015).

### *Procedurally Barred Claims*

As noted above, Petitioner filed various objections to the Report. (ECF No. 41). As an initial matter, as to the procedurally barred claims in Grounds Six through Fourteen[8] and whether

---

[8] As noted herein, Ground Fourteen really consisted of two separate claims of ineffective assistance of counsel – (1) that counsel did not move for a mistrial on the grounds that the prosecutor at trial made inflammatory statements during closing arguments (hereinafter "Fourteen A") and (2) that

Petitioner can prove cause and prejudice to overcome the procedural bar, Petitioner noted in his objections that he "has addressed all his *Martinez* claims . . . with relevant law and factual evidence in his filings." (ECF No. 41 at 15). However, he does not appear to object to any specific finding by the magistrate judge, nor does he appear to disagree with the magistrate judge's determination that it cannot grant Respondent's motion for summary judgment as to these grounds with the record presently before the court. The court agrees with the magistrate judge's analysis and finds that a full and appropriate analysis of these claims requires further development of the record and briefing, such that, at this juncture, the court cannot find that no genuine dispute of material fact exists as to whether Petitioner has established cause and prejudice to overcome the procedural bar of Grounds Six through Grounds Fourteen. Accordingly, the court **DENIES** Respondent's motion for summary judgment (ECF No. 23) as to Grounds Six through Fourteen A, without prejudice and with leave to renew upon further development of the record and briefing as to these grounds.

### Ground One: Trial Court Erred in Denying Directed Verdict Motion

As to Ground One, in his objections, Petitioner objects to the magistrate judge's determination that such claim is without merit and argues that her "factual findings are not reasonable and supported by the evidence, thus making them 'clearly erroneous'" and that her "decision is contrary to law because it failed to apply relevant case law." (ECF No. 41 at 2). In support of his objection, Petitioner asserts that the magistrate judge only referenced facts that were the evidence presented by Respondent in reaching her conclusions as to Ground One and that there was "overwhelming evidence that establishes that Petitioner acted in defense of another and self

---

counsel did not object to those statements during closing argument (hereinafter "Fourteen B"). The allegation that counsel was ineffective for failing to move for a mistrial is addressed here with the procedurally barred claims. The allegation that counsel was ineffective for failing to object to the prosecutor's statements at trial will be discussed on the merits.

defense" instead. *Id.* Accordingly, Petitioner argues that "no rational trier of fact could have found Petitioner guilty" considering his rendition of the facts. *Id.*

In analyzing Ground One, the magistrate judge gave a detailed and thorough recitation of the facts relevant to each charge in the indictment and summarized the elements required to be proven beyond a reasonable doubt. *See* (ECF No. 36 at 22–28). She further correctly indicated that for challenges on habeas review regarding sufficiency of evidence, the court is constrained in its review and must only grant relief where no rational trier of fact could find guilt beyond a reasonable doubt. *Id.* at 21 (citing *Jackson v. Virginia*, 443 U.S. 307, 326 (1979).

Specifically, as to the murder charge, the magistrate judge referenced the statute for murder, which indicates that "'[m]urder is the killing of any person with malice aforethought, either express or implied.'" *Id.* at 22 (quoting S.C. Code Ann. § 16-3-10). She then defined "malice" according to South Carolina law. *Id.* at 23. In turning to the facts, the magistrate judge discussed the testimony of the witnesses, including testimony that indicated Petitioner and Isaac Wilson (the deceased) had been in an altercation earlier the same day, at which time Petitioner yelled "y'all gonna get y'all's" as he drove away; testimony that after someone knocked on the door of the apartment, Isaac, his brother A.J., and their friend Walter Gadson ("Gadson") walked outside to the patio together; testimony that the witness inside the house heard a voice she recognized as Petitioner's say, "you've been sleeping with my girlfriend," before then hearing gunshots and seeing Isaac drop to the floor; and testimony that Gadson noticed a pistol in Petitioner's hand prior to the gunshots. *Id.* at 23. The magistrate judge further noted that evidence at trial noted that Isaac's blood was found on Petitioner's shoe. *Id.*

As to the charge for the charge of Assault and Battery With Intent to Kill (ABWIK)[9] as to A.J. Wilson, the magistrate judge noted that ABWIK "'comprises all the elements of murder except the death of the victim. To be convicted of [ABWIK], the jury must be satisfied beyond a reasonable doubt that if the victim had died, the defendant would have been guilty of murder.'" (ECF No. 36 at 24) (quoting *State v. Wilds*, 355 S.C. 269, 275, 584 S.E.2d 138, 141 (Ct. App. 2003)). She then summarized the testimony from trial: that A.J. testified he had been hanging out with Gadson and Isaac and Gadson walked outside, came back in, and said "that's them outside," referring to Petitioner; that Isaac grabbed a shotgun before all three men went outside; that A.J. saw someone walking towards them and thought the person had a gun, so he yelled "he got a gun," and took off running; and that A.J. testified that as he was running, he heard gunshots. *Id.* at 24– 25. A.J. further testified that once he got back inside the residence, he did not see Isaac, so he ran back outside, where he saw someone on top of Isaac on the ground. *Id.* at 25. A.J. testified that when he tried to pull the person off Isaac, a second person pulled a gun on A.J. and shot him. *Id.* Gadson testified at trial that he saw Petitioner with a gun, and evidence presented at trial indicated that Petitioner had gunshot residue on his hand. *Id.* Evidence at trial further indicated that A.J.'s blood was found on Petitioner's shoe. *Id.* Based on these facts, the magistrate judge concluded that a reasonable trier of fact could have found Petitioner guilty of ABWIK as to A.J., and, therefore that the state court's denial of Petitioner's directed verdict motion was not contrary to, nor an unreasonable application of clearly established federal law, nor was it an unreasonable determination of facts in light of the state record. *Id.*

---

[9] As noted in the Report, South Carolina abolished common law ABWIK in 2010. (ECF No. 36 at 24 n.9).

As to ABWIK as to Walter Gadson, the court again cited the elements of a charge for ABWIK. (ECF No. 36 at 26). She then discussed the evidence from trial, namely that Gadson had testified that Petitioner had previously that day indicated "y'all gonna get y'all's"; that Petitioner had admitted to the altercation earlier in the day; that Gadson testified he saw Petitioner get out of a vehicle parked at the apartment; that Petitioner's brother "dropped a metal rod he had been holding and reached down to his pants leg" to get a gun; and that at that time, A.J. and Isaac began to run towards the apartment. *Id.* at 26. Gadson testified that at that time, Isaac threw Gadson the shotgun, and Petitioner put the car in gear and "came towards Gadson." *Id.* Gadson testified he tried to shoot, but the safety was on, so he went to run instead. *Id.* He testified that before he could get to the porch, the car hit him from behind and ran him into a wall, and when he looked up, he saw Petitioner get out of the vehicle with a pistol. *Id.* Based on the evidence presented, the magistrate judge determined that Petitioner had failed to show that no rational trier of fact could have found him guilty of the ABWIK charge related to Gadson, and that, therefore, the state court's denial of his motion for directed verdict was not contrary to, nor an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts in light of the record. *Id.* at 27.

Finally, as to the charge of possession of a firearm or knife during commission of a violent crime, the magistrate judge cited the applicable law, which states that "[i]f a person is in possession of a firearm or visibly displays what appears to be a firearm . . . during the commission of a violent crime and is convicted of committing or attempting to commit a violent crime as defined in Section 16-1-60, he must be imprisoned five years, in addition to the punishment provided for the principal crime." (ECF No. 36 at 27) (citing S.C. Code Ann. § 16-23-490). She indicated that at the time Petitioner was indicted and tried, § 16-1-60 "provided that a violent crime included the offenses

of murder and ABWIK." *Id.* The magistrate judge reiterated that "there was sufficient evidence to allow the jury to decide the murder and assault and battery with intent to kill charges" and further noted that Gadson had testified that Petitioner had a gun in his hand and evidence showed that Petitioner had gunshot residue on his hand. *Id.* at 27–28. Accordingly, the magistrate judge determined that Petitioner had not shown that no rational trier of fact could have found him guilty of the weapons charge at trial, and, therefore, the state's denial of his motion for directed verdict was not contrary to, nor an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the record. *Id.* at 28.

In his objections, Petitioner addressed all charges together in relation to his claim that the state court erred in denying his motions for directed verdict. (ECF No. 41 at 2–4). Petitioner notes that at trial, additional testimony was provided, namely that he went to Isaac's residence that night to "peacefully talk and peacefully resolve a situation" despite their altercation earlier in the day (ECF No. 41 at 4), but that when the three men came to the porch, they were armed and that the men then pointed a shotgun at Petitioner's brother leaving him "no other choice but to react in self defense and defense of another" (ECF No. 41 at 2). He asserts that one of the witnesses, his ex-girlfriend, "admitted at trial that what happened that night was not Petitioner's fault" and that she "admitted Gadson was going to shoot [Petitioner's brother.]" *Id.* at 3. He further argues that he "shot a warning shot into a tree" before he acted against any person, and that all of these facts "proves the Petitioner . . . did not have malice" and that, therefore, "no rational trier of fact could have found Petitioner guilty of [the charges]." *Id.*

The court recognizes, as the magistrate judge did in her footnotes as to each charge, that "evidence allowing conflicting inferences was presented to the jury, and the jury was instructed on murder, voluntary manslaughter, self-defense and defense of others." *Id.* at 23-24, n.8; 25, n.10;

27, n.11. The magistrate judge correctly explained the law, which is that "when faced with evidence allowing conflicted inferences, this Court must presume that the jury resolved such conflicts in the State's favor" when the State prevailed at trial. *Id*. at 23 – 24, n.8; 25 n.10; 27, n.11. She then indicated that "[t]hus, even if sufficient evidence demonstrated Petitioner acted in self-defense or defense of another, it would not prevent a jury from rejecting that defense where sufficient evidence also exists to prove every element of [the charges]." *Id.* at 23-24, n.8 (as to murder); 25, n.10 (as to ABWIK A.J.); 27, n.11 (as to ABWIK Gadson). Accordingly, the magistrate judge determined, therefore, that the state court's denial of Petitioner's directed verdict motion was not contrary to, nor an unreasonable application of clearly established federal law, nor was it an unreasonable determination of facts in light of the state record. Finding this to be a correct recitation of the applicable law and that the evidence was such that a reasonable trier of fact could have found Petitioner guilty of the offenses charged given the evidence presented, despite Petitioner having presented conflicting evidence at trial, the court overrules Petitioner's objections as to Ground One.

### Ground Two: Insufficient Evidence for Element of "Sudden Heat of Passion" for a Voluntary Manslaughter Conviction

As to Ground Two, Petitioner again argues that the magistrate judge erred in finding his claim without merit and indicates that the court's "factual findings are not reasonable and supported by the evidence, thus making them 'clearly erroneous'" and that the court's determination is "'contrary to law' because it failed to apply relevant case law." (ECF No. 41 at 4–5). He indicates that the magistrate judge's findings of fact included "only the evidence of Petitioner's testimony" and that no reasonable trier of fact could have found him guilty of voluntary manslaughter. *Id.* at 5.

In analyzing Ground Two, the magistrate judge first explained that a voluntary manslaughter charge as being a lesser included offense of the charge of murder and defined it as "the unlawful killing of a human being in the sudden heat of passion upon sufficient legal provocation." (ECF No. 36 at 28) (quoting *State v. Cole*, 338 S.C. 97, 101, 525 S.E.2d 511, 513 (2000)). She then defined "sudden heat of passion" under South Carolina law, and recited the evidence presented at trial. *Id.* at 28 – 30. Specifically, at trial, Petitioner himself testified that he went to the residence to "talk" and that when he arrived, he stayed in the vehicle. *Id.* at 29. Petitioner then testified that the men walked outside with three shotguns and that Isaac told the others they were going to shoot. *Id.* Petitioner testified that he was "terrified that he and his brother were going to lose their lives" and that he saw Isaac with a shotgun pointed at his brother, so he got a gun out and shot it. *Id.* Gadson testified that he heard several gunshots. The magistrate judge concluded that this supported a voluntary manslaughter conviction because "Petitioner's testimony that three men had guns and had said they were going to shoot Petitioner and his brother, along with the testimony that they had a gun pointed at his brother, supports a finding that there was provocation." *Id.* She further concluded that Petitioner's account of being "terrified" and that fear supporting his actions supported a finding that he acted in the sudden heat of passion under South Carolina law. *Id.* (citing *State v. Payne*, 434 S.C. 121, 862 S.E.2d 81, 98 (Ct. App. 2021). Accordingly, the magistrate judge ultimately determined that Petitioner had failed to demonstrate that no reasonable trier of fact could find him guilty of voluntary manslaughter, and, therefore, the state court's dismissal of his appeal as to this allegation was not contrary to, nor an unreasonable application of federal law, nor was it an unreasonable determination of the facts in light of the record.

In his objections, Petitioner admits to being fearful that he and his brother were going to lose their lives but argues that "[t]his fear did not sway Petitioner's reason and render mind of Petitioner incapable of cool reflection; nor did this fear cause Petitioner to lose control and have an uncontrollable impulse to do violence." (ECF No. 41 at 5). Instead, Petitioner argues he was "in full control of himself" and was acting in self-defense. *Id.* at 6. He again reiterated his rendition of the facts and why he believed he should have been exonerated based on self-defense. *Id.* at 6–8.

As noted in the discussion on Ground One, the jury had all evidence before it, including facts supporting Petitioner's claim of self-defense and defense of others. However, there also existed evidence, as noted by the magistrate judge, that would support a finding of "heat of passion" such to support a voluntary manslaughter conviction. The court agrees with the magistrate judge that Petitioner has failed to demonstrate that no reasonable trier of fact could find that based on the record, including Petitioner's own testimony, that Petitioner acted in a "sudden heat of passion" such that would support a voluntary manslaughter conviction. Therefore, the court overrules Petitioner's objections as to Ground Two.

### Ground Three: Trial Court Erred in Instructing Mutual Combat

As for Ground Three, in which Petitioner argues that the state court erred in instructing the jury as to mutual combat, the magistrate judge noted that "'alleged errors in state court jury instructions . . . are matters of state law and do not provide a basis for federal habeas corpus relief unless the instructions infect the entire trial such that due process has been denied." (ECF No. 36 at 30) (citing *Temoney v. Sapp*, No. 0:06-1983-CMC-BM, 2007 WL 752200, at *8 (D.S.C. Mar. 1, 2007)). As the magistrate judge noted, "mutual combat" negates a claim of self-defense, as a finding of mutual combat means there is "mutual intent and willingness to fight." *Id*. at 31. The

25

magistrate judge determined that Petitioner has failed to establish that the mutual combat instruction was erroneous or that it was so prejudicial as to affect the whole trial. *Id.* In reaching this conclusion, the magistrate judge noted that Petitioner and his brother went to the apartment with brass knuckles, a metal rod or pipe, and a pistol, and that the other men came out on the porch with a shotgun. *Id.* at 31. She concluded that these facts could support a finding of a mutual intent and willingness to fight.

In his objections, Petitioner argues that such charge was "burden shifting and prejudicial to Petitioner's defense of self-defense and defense of another." (ECF No. 41 at 10). Petitioner reiterated the facts he felt supported a finding of self-defense and indicated that the charge "removed the burden from the state to disprove self defense and defense of another." *Id.* at 9–11. However, Petitioner does note that the trial court also gave a charge as to self-defense and defense of another. *Id.* at 11. He further argues that he did not intend to use the brass knuckles, that the metal pipe was found on Isaac's patio and was never dusted for fingerprints, and the pistol was in the glove box already and not placed there in anticipation for that night. *Id.* at 10.

As Petitioner asserts, once the court determined that the issue of self-defense would be submitted to the jury, the Respondent bore the burden of disproving self-defense beyond a reasonable doubt. *See State v. Addison*, 343 S.C. 290, 293, 540 S.E.2d 449, 451 (2000). The South Carolina Court of Appeals has held that where an *unwarranted* mutual combat charge is charged in conjunction with a self-defense charge, such comingling is "problematic" since mutual combat "negates the no-fault element of self-defense." *State v. Bowers*, 428 S.C. 21, 37, 832 S.E.2d 623, 632 (Ct. App. 2019). Accordingly, the key question here is whether such charge was *warranted*, as the state court held it was.

In looking at the evidence presented at trial, first, it is uncontested that on the day of the incident, Petitioner and Isaac Wilson had an altercation earlier in the day. *See* (ECF No. 22-1 at 154). At trial, Gadson described this altercation as a "fist fight" in which both Gadson and Isaac Wilson struck Petitioner several times while Petitioner sat in his vehicle. *Id.* Gadson testified at trial that when Petitioner left this altercation, he yelled "y'all gonna get y'alls" before leaving the scene. *Id.* That same day, Petitioner arrived at A.J., Isaac, and Gadson's apartment armed with brass knuckles in his pocket and a firearm in the vehicle. (ECF No. 22-4 at 181). Though he now attempts to explain why he possessed such weapons through his objections, it is uncontested that he did, in fact, have those weapons in his possession. Additionally, there was evidence in the record that Petitioner's brother, his codefendant, approached the porch armed with a large metal rod. Furthermore, Petitioner testified at trial that when Isaac came to the porch with a shotgun in his hand, he said "we're going to shoot the n******s." *Id.* at 205. Additionally, there was evidence presented at trial that Petitioner confronted Isaac about "sleeping with [his] girlfriend" prior to shooting. (ECF No. 22-1 at 93). Furthermore, Petitioner signed a statement indicating that during the dispute, his brother and codefendant said "put the gun down and let's fight, and Isaac says, yeah, and then they start fighting." (ECF No. 22-3 at 208).

The court finds sufficient evidence to support a charge for mutual combat. A charge on mutual combat may be appropriate "when there is evidence of an antecedent agreement to fight and when both parties are armed with dangerous weapons." *Bowers,* 428 S.C. at 33, 832 S.E.2d at 630. The case law reflects that it is "essential there is evidence of a pre-existing ill-will between the parties and that both parties are armed with deadly weapons and have knowledge that the other is armed." *Id.* In several cases in South Carolina, a pre-existing ill will has supplanted the "antecedent agreement" such that it was sufficient to indicate the parties may be anticipatory of an

altercation. *See, e.g., State v. Mathis*, 174 S.C. 344, 348, 177 S.E. 318, 319 (1934) (finding mutual combat charge proper where the parties were on the lookout for each other and both parties were armed). Here, there was evidence of pre-existing bad blood between Petitioner and several of the victims, particularly Isaac Wilson, who he had fought earlier in the day and who was allegedly having a sexual relationship with Petitioner's children's mother. Furthermore, it is uncontested that Isaac came out to the patio with a shotgun in hand and that at some point during the altercation, Petitioner also had a gun in his hand. Testimony was given that Petitioner's codefendant, his brother, approached the patio armed with a metal rod, though the origin of the metal rod (whether brought to the fight or found on the porch and then used) was contested. Furthermore, the statements of both Petitioner and Isaac made during the day indicate a desire to in some way harm the other individual. The court finds that based on this record and South Carolina precedent, the trial court did not err in charging mutual combat to the jury. *See State v. Graham*, 260 S.C. 449, 450, 196 S.E.2d 495, 495 (1973) (stating to establish mutual combat "there must exist mutual intent and willingness to fight" and that "this intent may be manifested by the acts and conduct of the parties and circumstances leading up to combat" and finding an instruction proper where the parties had been feuding prior to the killing and were both armed).   Accordingly, the court overrules Petitioner's objections to the Report as to Ground Three.

### Ground Four: Ineffective Assistance of Counsel for Failure to Move for Acquittal Based on Judge's Comments at Sentencing

To establish a Sixth Amendment violation for ineffective assistance of counsel, a petitioner must show both that his counsel's representation "fell below an objective standard of reasonableness," and that such representation caused him to suffer prejudice. *Strickland v. Washington*, 466 U.S. 668, 688–92. To establish that he or she has suffered such prejudice, a

petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. For habeas review, the key question is whether the state court's application of *Strickland* was unreasonable. *See United Harrington v. Richter*, 562 U.S. 86, 101 (2011). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.*

As to Ground Four, Petitioner states in his objections that he "agreed with the trial court that his convictions were a 'compromise verdict' and trial counsel should have motioned during the sentencing hearing or filed a post-trial motion after the sentencing hearing because the convictions were illegal verdicts and whatever sentence the Petitioner received would not serve justice – as stated by the trial court." (ECF No. 41 at 13). Accordingly, it appears that Petitioner is not arguing that the judge's statement prejudiced him unfairly, which is how the Summary Judgment Motion seems to characterize such claim. Rather, he argues that the trial judge may have indicated his verdict was unlawful as rendered, and that he agreed with him. *See id.*  The court finds this argument is misguided. In reviewing the PCR Court's review of the sentencing hearing, the PCR court noted that "Trial counsel testified she did not believe the judge was expressing an opinion that the verdict should have been murder rather than voluntary manslaughter, but that the trial court had 'heard the facts and [had] to base his sentence on a number of factors including the facts of the trial.'" (ECF No. 22-7 at 104). The PCR court agreed with trial counsel's interpretation of the judge's statements at sentencing, and determined she was not deficient in failing to object, nor was Petitioner prejudiced by such failure to object.

To the extent Petitioner's argument is that his counsel should have moved for acquittal based on the statements of the sentencing judge being improper, the magistrate judge determined

that the PCR court's application of the *Strickland* standard was not unreasonable, and the court agrees. Petitioner does not appear to object on this basis. To the extent Petitioner's argument is that his counsel should have moved for acquittal based on the fact that his conviction was unlawful, and that such was said by the sentencing court, the court finds that such argument is an incorrect interpretation of the sentencing judge's statement. As noted previously in this order, the evidence supported a finding of guilt, and such conviction was lawful. Accordingly, Petitioner's objections as to Ground Four are overruled.

### Ground Five: Ineffective Assistance of Counsel for Failure to File Pretrial Immunity Motion Regarding Protection of Persons and Property Act

As to Ground Five, in his objections, Petitioner argues that this claim is governed by *Martinez v. Ryan*, 566 U.S. 1 (2012), and that he has "proven this ground with material facts" and is entitled to relief. (ECF No. 41 at 14). The court notes that in *Martinez*, the Supreme Court held that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez*, 566 U.S. at 17.

The magistrate judge did drop a footnote that indicated "[j]ust as with Ground Four, the Court is not convinced that Ground Five is not procedurally barred because it was not raised in the petition for writ of certiorari in Petitioner's PCR appeal. . . . However, because procedural default is an affirmative defense that is waived if not raised by respondents, *Gray*, 518 U.S. at 165 – 66, the court addresses the merits of this ground." (ECF No. 36 at 36–37 n.14). However, as noted therein, the magistrate judge reached the merits of Petitioner's claim and ultimately determined

his claim was meritless. Specifically, she determined that the PCR court's application of the *Strickland* standard was not unreasonable, and Petitioner had not alleged or shown that the PCR court's conclusion was the result of unreasonable factual findings. *Id.* at 39. Petitioner's objections do not touch on the magistrate judge's ultimate determination beyond a mere disagreement and stating that his claim has merit. The court agrees with the magistrate judge's analysis and conclusion and finds that the state court's determination that counsel was not ineffective in failing to move for an immunity hearing was not an unreasonable application of *Strickland* nor the result of an unreasonable determination of the facts in the case.[10]  Accordingly, Petitioner's objection as to Ground Five are overruled.

### Ground Fourteen B: Ineffective Assistance of Counsel for Failing to Object to Prosecutor's Statements in Closing Argument

Similarly, as to Ground Fourteen B, in his objections, Petitioner argues that this claim is governed by *Martinez v. Ryan*, 566 U.S. 1 (2012), and that he has "proven this ground with material facts" and is entitled to relief. (ECF No. 41 at 14). As noted above, Martinez deals with when a Petitioner can overcome the hurdle of a claim having been procedurally defaulted by establishing cause for such default. *Martinez*, 566 U.S. at 17. Here, the magistrate judge reached the merits of Ground Fourteen B, finding that the PCR court had applied the correct legal standard and that its

---

[10] The PCR Court noted that "[t]he record in this case provides no evidence bearing significance to any provision of the [Protection of Persons and Property] Act. This incident occurred outside of the victims' residence. There was no evidence presented at trial that would support a finding that the victims were in the process of unlawfully and forcefully entering [Petitioner's] dwelling, residence, or occupied vehicle. Further there was no evidence presented at trial reflecting the victims were removing or attempting to remove [Petitioner] or his codefendant against their will from their dwelling, residence or occupied vehicle." (ECF No. 22-7 at 89–90). Accordingly, the PCR court held that counsel was not ineffective in failing to move for an immunity hearing on the basis of the Act, as the Act did not apply. The Act is a matter of state law, and this court grants great deference to the state court in applying and interpreting its own law.

application of *Strickland* was not unreasonable. (ECF No. 36 at 42). Furthermore, the magistrate judge noted that the trial judge had informed the jury several times that the arguments of counsel during openings and closings were not evidence. (ECF Nos. 22-1 at 64, 65; 22-5 at 52). Accordingly, the magistrate judge determined that the PCR court's determination was supported by the record and was not the result of unreasonable factual findings. (ECF No. 36 at 43). In his objections, beyond arguing that such claim falls under *Martinez,* Petitioner merely disagrees with the disposition of this claim.[11] (ECF No. 41 at 14). However, he provides no basis for such disagreement. The court agrees with the magistrate judge's analysis and conclusion and finds that the state court's determination that counsel was not ineffective in failing to object to counsel's closing argument was not an unreasonable application of *Strickland* nor the result of an unreasonable determination of the facts in the case.

## CONCLUSION

Thus, having thoroughly reviewed the Report and the record under the appropriate standards, the court **ADOPTS** the Report (ECF No. 36) to the extent it recommends that the Motion for Summary Judgment be Granted in Part and Denied in Part, and incorporates the Report herein by reference. Specifically, the Motion for Summary Judgment (ECF No. 23) is **GRANTED** as to Grounds One, Two, Three, Four, Five, and Fourteen B. The Motion for Summary Judgment is **DENIED** as to Grounds Six through Fourteen A, and such denial is without prejudice and with leave to refile.

---

[11] Notably, as discussed herein, Ground Fourteen also included a claim for ineffective assistance of trial for failing to move for a mistrial based on Respondent's closing argument. This ground was deemed procedurally defaulted, and as noted herein, the court holds that a question exists as to whether *Martinez* applies and whether Petitioner can show cause and prejudice to overcome procedural default.

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find both that his constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In the instant matter, the court finds that the petitioner failed to make a "substantial showing of the denial of a constitutional right." Accordingly, the court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Anderson, South Carolina
September 25, 2023